UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**05-21014**

CASE NO. _____

**CIV-JORDAN**

ROBERT BIONDOLILLO,

Plaintiff,

[KLEIN]

vs.

PAUL MYER, Federal Bureau of
Investigation Special Agent, in his individual
capacity; STEFFAN NASS, Federal Bureau
of Investigation Special Agent, in his
individual capacity,

Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

ROBERT BIONDOLILLO, through counsel, sues Defendants, Federal Bureau of
Investigation Special Agent PAUL MYER, in his individual capacity; and Federal Bureau of
Investigation Special Agent STEFFAN NASS, in his individual capacity, and states:

### INTRODUCTION

1.      This Complaint describes how Robert BIONDOLILLO was unjustly targeted by
PAUL MYER and STEFFAN NASS, individuals employed as Special Agents by the Federal Bureau
of Investigation, for criminal prosecution and how FBI management did little, if anything, to
supervise and/or monitor the investigation of Agent BIONDOLILLO by MYER and NASS.

### PARTIES

2.      ROBERT BIONDOLILLO is a United States citizen residing in Broward County,
Florida.

3.      Defendant PAUL MYER is and was at all material times an agent with the Federal Bureau of Investigation assigned to the Miami field office.

4.      Defendant STEFFAN NASS is and was at all material times an agent with the Federal Bureau of Investigation assigned to the Miami field office.

5.      The Federal Bureau of Investigation is a division of the United States Department of Justice and an Executive Agency of the United States of America under 5 U.S.C. § 101.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction of these claims pursuant to 28 U.S.C. § 1331 as they arise under the Constitution, laws, or treaties of the United States.

7.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to this Complaint occurred in said District.

### FACTUAL ALLEGATIONS

8.      In 1998, ROBERT BIONDOLILLO ("Agent BIONDOLILLO"), then an agent with the Florida Department of Law Enforcement ("FDLE"), was assigned to a Federal Bureau of Investigation ("FBI") task force.

9.      After receiving "Top Secret Security Clearance" from the FBI and National Security Council of the United States, Agent BIONDOLILLO was assigned to OC-1, an organized crime squad, and assigned to the FBI Miami field office in North Miami Beach, Florida.

10.     At the time, Agent BIONDOLILLO had over two decades' of experience as a law enforcement officer and had received over 70 commendations for his previous work with the City of Sunrise Police Department and the FDLE.

11.     In or about January 1999, the FBI began an investigation of Russell Posner

2

and Sunstate Doctor's Center for possible health care fraud. This investigation was assigned to Defendant STEFFAN NASS, who was working with FBI squad WC-2, a health care fraud squad. During this period of time, Defendant PAUL MYER was an FBI supervisory special agent with responsibility over squad WC-2.

12.     The investigation initially focused on possible fraudulent billings made by Sunstate to Blue Cross Blue Shield insurance companies. Shortly after the FBI opened its investigation, the United States Attorney's Office for the Southern District of Florida assigned Assistant United States Attorney Robert Nicholson to the case.

13.     Agent BIONDOLILLO supposedly first came under government suspicion because, according to Agent NASS, an informant cooperating in the investigation of Posner and Sunstate purportedly claimed that Agent BIONDOLILLO was one of several government employees engaged in fraudulent billing with Posner.

14.     Other than Agent NASS' own claim, no evidence has ever been presented to support either that anyone told Agent NASS that Agent BIONDOLILLO engaged in fraudulent billing with Posner or that Agent BIONDOLILLO actually did so.

15.     Early on July 19, 2000, FBI agents Susan V. Pittman and David M. Roberts arrived at Agent BIONDOLILLO's house at the direction of MYER and/or NASS. Although asked to wait outside momentarily, the agents unlawfully entered Agent BIONDOLILLO's home anyway. One of the agents explained the intrusion by remarking, "It's hot out there."

16.     While these agents questioned Agent BIONDOLILLO about alleged double billing for medical services by Sunstate and Posner, other agents searched Sunstate's offices and Posner's home.

3

17.     Posner purportedly had in his home a videotape of a former candidate for Broward County office engaged in a sexual encounter with a former secretary of Posner. The envelope containing the tape purportedly was marked, "In case of death, forward to Captain BIONDOLILLO, Sunrise Police".

18.     At the time of the search, Agent BIONDOLILLO had been retired from the City of Sunrise Police Department for more than two years, was employed by the Florida Department of Law Enforcement and assigned to an FBI task force.

19.     Following the discovery of the tape, NASS and MYER expressed concerns to the United States Attorney's Office and to their superiors at the FBI over Agent BIONDOLILLO's continued association with the FBI.

20.     According to the United States Attorney's Office, as of August 2000, Agent BIONDOLILLO was not among the individuals being investigated in connection with the investigation of Posner and Sunstate.

21.     During this same period of time, on information and belief, Defendants, NASS and/or MYER, contacted members of the media, including the Fort Lauderdale Sun-Sentinel, to inform them that Agent BIONDOLILLO was being investigated for insurance fraud.

22.     On or about August 30, 2000, Agent BIONDOLILLO was contacted by a Sun-Sentinel reporter at his place of employment whereupon he was requested to comment on his personnel file being subpoenaed by the FBI, and the fact that he, as a police officer, was being investigated by the FBI.

23.     Agent BIONDOLILLO was informed by this reporter that the FBI was investigating

4

other City of Sunrise police officers and City of Sunrise public officials who received medical treatment at the same medical facility that he had previously been treated at.

24.     On an unknown date, Defendants, NASS and MYER, contacted members of the Sunrise Police Department and informed them, including Captain Puleo, that Agent BIONDOLILLO was being investigated for insurance fraud because of Agent BIONDOLILLO's treatment at the medical facility.

25.     As a result of the investigation by Defendants NASS and MYER, the Special Agent in Charge Hector Pesquera, personally addressed the members of the La Cosa Nostra Task Force to inform them that Agent BIONDOLILLO was only a witness in a fraud investigation because he was a patient at the medical clinic being investigated. In fact, SAC Pesquera further informed the members of the task force that Agent BIONDOLILLO was never a suspect in any criminal matter.

26.     Contrary to SAC Pesquera's comments to members of the task force, Defendant MYER informed the FDLE Inspector, Scott Grant, that Agent BIONDOLILLO was under investigation by the FBI for possible involvement in criminal activity. Agent MYER told Inspector Grant that the investigation was ongoing and that felony charges might eventually be filed against Agent BIONDOLILLO. Defendant MYER stated that there was a "50-50 chance" that Agent BIONDOLILLO would be indicted as a result of the fraud investigation.

27.     James Moore, Commissioner of the FDLE, and Jamie McLaughlin, Director of FDLE Executive Investigations, wrote to Agent MYER on October 25, 2000, to confirm the substance of the conversation between Agent MYER and Inspector Grant.

28.     In response to the letter from Moore and McLaughlin, On November 7, 2000

5

Hector Pesquera, then Special Agent in Charge of the FBI Miami Office, wrote that "Mr. BIONDOLILLO is not currently, nor has he ever been, a named subject of an FBI criminal investigation."

29.     In December 2000, Agent NASS was transferred to an FBI public corruption FBI squad headed by Kathy Elroy, a supervisory special agent.

30.     On or about December 20, 2000, Agent BIONDOLILLO was requested to meet with Assistant Special Agent in Charge (ASAC) Al Sadowski regarding the statements made by Defendant, MYER, that Agent BIONDOLILLO would be indicted because of his involvement at the medical facility.

31.     On or about January 9, 2001, Agent BIONDOLILLO met with SAC Pesquera and ASAC Casey regarding the aforementioned statements made by Defendants, MYER and NASS, and informed Agent BIONDOLILLO that these statements should never have been made and apologized to him for the statements.

32.     On January 18, 2001, then Special Agent in Charge Pesquera spoke with Doyle Jourdan, Regional Director of the FDLE, and expressed his continued support for Agent BIONDOLILLO's assignment to the FBI's organized crime task force. The following day, Pesquera sent a letter confirming the conversation.

33.     In 2001, SAC Pesquera ordered ASAC Figulsi to send an intra-agency e-mail to all special agents assigned to the white collar investigation squads and public corruption squads stating that Agent BIONDOLILLO had been cleared criminally and administratively of any wrongdoing.

34.     One of the aforementioned White Collar units receiving the Figulsi e-mail was

6

FREIDIN & BROWN. P.A.. *One Biscayne Tower, Suite 3100, 2 South Biscayne Blvd., Miami, FL 33131, Phone: 305.371.3666, fax: 305.371.6725*

Defendant MYER.

35.    On March 2, 2001, Louis Freeh, Director of the FBI in Washington, D.C.,

sent Jourdan a letter praising Agent BIONDOLILLO's work with the organized crime task force.

36.    In June 2001, Agent NASS claimed that a source told him that, while Agent

BIONDOLILLO was a captain with the Sunrise Police Department, he had made a fraudulent

worker's compensation claim and made fraudulent claims in a related lawsuit several years earlier.

37.    Despite having been transferred from the health care fraud squad, Agent NASS

continued to investigate Agent BIONDOLILLO for this alleged fraud.

38.    On July 3, 2001, Agent NASS, using his official position and credentials, went to the

City of Sunrise and obtained, without subpoena or other lawful process, agent BIONDOLILLO's

worker's compensation records containing confidential medical records.

39.    On July 11, 2001, Agent NASS, using his official position and credentials,

nefariously obtained Sunrise Police documents pertaining to Agent BIONDOLILLO's January, 1994

injury.

40.    Special Agent in Charge Pesquera had not authorized an investigation of

Agent BIONDOLILLO and in fact was not aware that an investigation of Agent BIONDOLILLO

was being conducted.

41.    As a direct consequence of Defendant, NASS' and MYER's, actions, on or about

November 1, 2001, Agent BIONDOLILLO was informed by his FDLE supervisor that he had been

removed from the FBI task force and was instructed to turn in his credentials and empty his desk at

the FBI Miami Field Office.

42.    On or about May 7, 2002, Defendants, MYER and NASS, provided the United States

Attorney's Office with false, inaccurate, incomplete and/or misleading information about Agent BIONDOLILLO an effort to obtain an unwarranted indictment against him.

43.     On or about May 7, 2002, as a direct result of the false, inaccurate, incomplete and/or misleading information presented to a grand jury by Defendants, MYER and NASS regarding Agent BIONDOLILLO and their negligent and reckless investigation, the grand jury issued a two count indictment against Agent BIONDOLILLO for fraud arising from the alleged fraudulent workers compensation claim and lawsuit. (A copy of the indictment is attached hereto as Exhibit "A".)

44.     Following his initial appearance, Agent BIONDOLILLO was released on condition that he sign a Personal Surety Bond, surrender his travel documents, report weekly to Pretrial Services and remain in the Southern District of Florida.

45.     As a result of the indictment and the conditions of his bond, Agent BIONDOLILLO was denied annual raises in salary, denied the opportunity to take various supervisory examinations, the satisfaction of which would have resulted in further increases in his salary. In addition, Agent BIONDOLILLO had to incur the expense of retaining counsel, forego prepaid trips to France and Canada.

46.     The case was tried in 2002 before United States District Court Judge José Martinez and ended in a mistrial.

47.     Subsequently, on May 7, 2003, exactly one year after the indictment was filed, the government dismissed the case against Agent BIONDOLILLO.

8

## COUNT I

### VIOLATION OF FOURTH AMENDMENT RIGHTS, MALICIOUS PROSECUTION, AGAINST DEFENDANT PAUL MYER

48.     Agent BIONDOLILLO adopts and re-alleges paragraphs 1 through 48 as if fully set forth herein.

49.     At all times material hereto, Agent BIONDOLILLO had a constitutional right under the Fourth Amendment to be protected against unlawful arrests.

50.     On or about May 7, 2002, a grand jury was assembled in Broward County, Florida, to hear evidence against Agent BIONDOLILLO.

51.     On or about May 7, 2002, Defendant, MYER, intentionally perjured himself and/or arranged for the submission of perjured testimony before the grand jury.

52.     As a result of Defendant, MYER's aforementioned actions, an indictment was issued against Agent BIONDOLILLO resulting in the unlawful arrest of Agent BIONDOLILLO.

53.     As a result of the aforementioned arrest, Agent BIONDOLILLO was processed as a criminal defendant at the federal jail located in Fort Lauderdale, Florida. Agent BIONDOLILLO was required to attend all court hearings and full trial of his case.

54.     But for the perjured testimony Agent BIONDOLILLO would not have been arrested and his constitutional rights violated.

55.     The criminal trial against Agent BIONDOLILLO ended in a mistrial after which the charges against Agent BIONDOLILLO were dismissed by the United States Attorney's Office.  As such, the proceedings had a bona termination in favor of Agent BIONDOLILLO.

56.     At all times material hereto, Defendant, MYER, was aware that SAC Pesquera and

9

ASAC Casey cleared Agent BIONDOLILLO of any criminal or administrative wrongdoing and that there was no probable cause for commencing or assisting with the criminal proceeding against Agent BIONDOLILLO.

57.     Defendant, MYER, had knowledge and was aware that there was no probable cause to proceed with an investigation against Agent BIONDOLILLO, yet knowingly continued to assist with the prosecution of Agent BIONDOLILLO and intentionally withheld and/or provided false or misleading information from the prosecuting attorney, thereby acting with malice.

58.     Because of Defendant, MYER's actions, Agent BIONDOLILLO has suffered a constitutional injury including, but not limited to, a documented arrest history in the National Crime Information Center computer, severe and substantial emotional distress, humiliation, damage to his reputation and pain and suffering.

WHEREFORE, ROBERT BIONDOLILLO, demands judgment against Defendant, PAUL MYER, for all damages, attorneys' fees and costs and all such relief deemed appropriate by the Court.

## COUNT II

### VIOLATION OF FIFTH AMENDMENT RIGHTS
### VIOLATION OF DUE PROCESS, BY DEFENDANT PAUL MYER

59.     Agent BIONDOLILLO adopts and realleges paragraphs 1 through 48 as if fully set forth herein.

60.     At all times material hereto, Agent BIONDOLILLO had a constitutional right under the Fifth Amendment of due process to a fair trial.

61.     At all times material hereto, Defendant, MYER, had a responsibility to turn all

10

exculpatory evidence over to the prosecuting attorney.

62.     At all times material hereto, Defendant, MYER, deliberately withheld exculpatory evidence, specifically letters from the FBI Special Agent in Charge of the Miami Field Office that Agent BIONDOLILLO has been cleared of any criminal or administrative wrongdoing.

63.     As a result of Defendant, MYER, deliberately withholding this exculpatory evidence, Agent BIONDOLILLO's constitutional right of due process was violated, resulting in injury to Agent BIONDOLILLO including, but not limited to, a documented arrest history in the National Crime Information Center computer, severe and substantial emotional distress, humiliation, damage to his reputation and pain and suffering.

WHEREFORE, ROBERT BIONDOLILLO, demands judgment against Defendant, PAUL MYER, for all damages, attorneys' fees and costs and all such relief deemed appropriate by the Court.

## COUNT III

## VIOLATION OF FOURTH AMENDMENT RIGHTS, MALICIOUS PROSECUTION, AGAINST DEFENDANT STEFFAN NASS

64.     Agent BIONDOLILLO adopts and re-alleges paragraphs 1 through 48 as if fully set forth herein.

65.     At all times material hereto, Agent BIONDOLILLO had a constitutional right under the Fourth Amendment to be protected against unlawful arrests.

66.     On or about May 7, 2002, a grand jury was assembled in Broward County, Florida, to hear evidence against Agent BIONDOLILLO.

67.     On or about May 7, 2002, Defendant, NASS, perjured himself and/or arranged for

11

the submission of perjured testimony before the grand jury.

68.     As a result of Defendant, NASS's aforementioned actions, an indictment was issued against Agent BIONDOLILLO resulting in the unlawful arrest of Agent BIONDOLILLO.

69.     As a result of the aforementioned arrest, Agent BIONDOLILLO was processed as a criminal defendant at the federal jail located in Fort Lauderdale, Florida.

70.     As a result of the aforementioned arrest, Agent BIONDOLILLO was required to attend all court hearings including his trial and arraignment.

71.     But for the perjured testimony, Agent BIONDOLILLO would not have been arrested and his constitutional rights violated.

72.     The criminal trial against Agent BIONDOLILLO ended in a mistrial after which the charges against Agent BIONDOLILLO were dismissed by the United States Attorney's Office.  As such, the proceedings had a bona termination in favor of Agent BIONDOLILLO.

73.     At all times material hereto, Defendant, NASS, was aware that SAC Pesquera and ASAC Casey cleared Agent BIONDOLILLO of any criminal or administrative wrongdoing and that there was no probable cause for commencing or assisting with the criminal proceeding against Agent BIONDOLILLO.

74.     Defendant, NASS, had knowledge and was aware that there was no probable cause to proceed with an investigation against Agent BIONDOLILLO, yet knowingly continued to assist with the prosecution of Agent BIONDOLILLO and intentionally withheld and/or provided false or misleading information from the prosecuting attorney, thereby acting with malice.

75.     Because of Defendant, NASS's actions, Agent BIONDOLILLO has suffered a

12

constitutional injury including, but not limited to, a documented arrest history in the National Crime

Information Center computer, severe and substantial emotional distress, humiliation, damage to his

reputation and pain and suffering.

WHEREFORE, ROBERT BIONDOLILLO, demands judgment against Defendant,

STEFFAN NASS, for all damages, attorneys' fees and costs and all such relief deemed appropriate

by the Court.

## COUNT IV

### VIOLATION OF FIFTH AMENDMENT RIGHTS
### VIOLATION OF DUE PROCESS, BY DEFENDANT STEFFAN NASS

76.     Agent BIONDOLILLO adopts and re-alleges paragraphs 1 through 48 as if fully

set forth herein.

77.     At all times material hereto, Agent BIONDOLILLO had a constitutional right under

the Fifth Amendment of due process to a fair trial.

78.     At all times material hereto, Defendant, NASS, had a responsibility to turn all

exculpatory evidence over to the prosecuting attorney.

79.     At all times material hereto, Defendant, NASS, deliberately withheld exculpatory

evidence, specifically letters from the FBI Special Agent in Charge of the Miami Field Office that

Agent BIONDOLILLO has been cleared of any criminal or administrative wrongdoing.

80.     As a result of Defendant, NASS, deliberately withholding this exculpatory evidence,

Agent BIONDOLILLO's constitutional right of due process was violated, resulting in injury to Agent

BIONDOLILLO including, but not limited to, a documented arrest history in the National Crime

FREIDIN & BROWN, P.A.. One Biscayne Tower, Suite 3100, 2 South Biscayne Blvd., Miami, FL 33131, Phone: 305.371.3666, fax: 305.371.6725

Information Center computer, severe and substantial emotional distress, humiliation, damage to his reputation and pain and suffering.

WHEREFORE, ROBERT BIONDOLILLO, demands judgment against Defendant, STEFFAN NASS, for all damages, attorneys' fees and costs and all such relief deemed appropriate by the Court.

Dated this 12th day of April, 2005.

Respectfully submitted,

**FREIDIN & BROWN, P.A.**
One Biscayne Tower, Suite 3100
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-371-3666
Facsimile: 305-371-6725
*admin@freidinbrown.com*
Attorneys for ROBERT BIONDOLILLO

By: _____
     **T. OMAR MALONE**
     FLORIDA BAR NO. 697796
     **MANUEL L. DOBRINSKY**
     FLORIDA BAR NO. 775525

14

JNK:sr

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _02 - 60086 - CR - DimiTRouLEAS_
18 USC 1341
18 USC 2

UNITED STATES OF AMERICA,          :

              PLAINTIFF,          :

v.          :

ROBERT ANTHONY BIONDOLILLO,          :

            DEFENDANT.          :

---

INDICTMENT

The Grand Jury charges that:

COUNTS 1-2
(Mail Fraud)

BACKGROUND

At all times relevant to the indictment:

1.      Defendant Robert Anthony Biondolillo was a captain with the City of Sunrise Police Department.

2.      Johns Eastern Company, Inc., (Johns Eastern) was an insurance carrier that insured workman's compensation claims for the City of Sunrise, Florida.

3.      Lehn Management (Lehn) owned the McDonalds' (McDonalds) franchise located at 13655 West Sunrise Blvd., Sunrise, Florida.

1

" _A_ "

4.    Crum & Forster was an insurance company that insured claims filed against Lehn.

5.    S & S Auto Services (S&S) owned Sawgrass Shell (Shell) located at 13605 West Sunrise Boulevard, Sunrise, Florida.

6.    North American Specialty Insurance (North American) was an insurance company that insured claims against S&S.

7.    On or about January 23, 1994, officers of the Sunrise Police Department and an agent of the Drug Enforcement Administration arrested and handcuffed three suspected drug traffickers in the vicinity of the Shell and the McDonalds in Sunrise, Florida.   In making the arrest one of the officers tackled one of the drug traffickers.  Defendant Biondolillo did not tackle any of the drug traffickers. He first approached the drug traffickers after they were lying handcuffed on the ground.

8.    After the arrest defendant Biondolillo asked another officer to take him to the hospital  claiming that he had tackled one of the drug traffickers and injured his neck and shoulder.

<u>SCHEME TO DEFRAUD</u>

9.    From on or about January 23, 1994, through the date of this indictment, at Broward County, in the Southern District of Florida, and elsewhere, the defendant,

ROBERT ANTHONY BIONDOLILLO,

devised and intended to devise a scheme and artifice to defraud and for obtaining money and other valuable property from the City of Sunrise, S&S, Lehn and their respective insurance carriers by means of false and fraudulent pretenses and representations.

2

## PURPOSE OF THE SCHEME TO DEFRAUD

10.     It was the purpose of the scheme and artifice that defendant Biondolillo would

obtain money and other valuable property from the City of Sunrise and its insurance carrier

through a fraudulent workers' compensation claim and from Lehn and S&S and their respective

insurance carriers by means of false and fraudulent pretenses and representations regarding the

cause and the effect and the circumstances surrounding the alleged injuries that defendant

Biondolillo incurred during the arrest of the drug traffickers on January 23, 1994.

## MANNER AND MEANS OF THE SCHEME

11.     It was part of the scheme that on or about January 24, 1994, defendant Biondolillo

requested that his supervisor file a Supervisor's Accident/Injury Report (The Report) for the

injuries sustained from the arrest in order to obtain workers' compensation benefits.  The Report,

based upon information provided by defendant Biondolillo falsely stated that the defendant

Biondolillo injured himself when he tackled a fleeing suspect and fell to the ground and injured

himself.

12.     It was further part of the scheme that on or about January 24, 1994, defendant

Biondolillo went to a doctor specializing in orthopedics in order to obtain workers' compensation

benefits and told the doctor, among other things, that he was involved in a drug raid and was

chasing after an assailant when he ran into one of the people he was chasing striking the person

with his shoulder.

13.     It was further part of the scheme that on or about January 25, 1994, defendant

Biondolillo saw a doctor specializing in neurology in order to obtain workers' compensation

benefits and told the doctor, among other things, that he was chasing a suspect and attempted to

3

wrestle the subject down when he put his head and shoulder down and struck his right shoulder
area with full impact into the suspect.

14.     It was further part of the scheme that on or about January 31, 1994, defendant
Biondolillo filed a police report claiming that he was running after a suspect in a drug transaction
when, in an effort to apprehend the suspect, defendant Biondolillo used his right shoulder in an
effort to knock the suspect down.  Defendant Biondolillo's arrest report stated that after the
tackle the defendant experienced severe pain in his right shoulder, as well as numbness down his
right arm and into his hand.

15.     It was further part of the scheme that on or about April 14, 1994, defendant
Biondolillo obtained a second opinion from a doctor specializing in neurology in order to obtain
workers' compensation benefits and told the doctor, among other things, that he was chasing a
suspect and tackled the suspect landing on his right shoulder and that he was jarred very severely.

16.     It was further part of the scheme that from in or about January 1995 through in or
about November 1995 defendant Biondolillo was paid a total of $9,999 by Johns Eastern for a
15% impairment mainly due to his fraudulent representation that he injured his neck and
shoulder from the impact of tackling a suspect on January 23, 1994.

17.     It was further part of the scheme that from in or about January 1994 to the present
Johns Eastern has paid medical and pharmaceutical bills for defendant Biondolillo, and remains
liable for future claims.

18.     It was further part of the scheme that or about January 22, 1996, defendant
Biondolillo filed a lawsuit claiming that he should receive a money judgment from Lehn & S&S
due to their negligence in maintaining the area between their properties, which caused the

defendant to fall into a ditch filled with water and be injured.

19.     It was further part of the scheme that in or about December 1996, North American mailed a check in the amount of $40,000 to defendant Biondolillo's attorney to settle his claim against S&S.

20.     It was further part of the scheme that on or about January 13, 1997, defendant Biondolillo was deposed by the attorney representing Lehn and made numerous material misrepresentations and omissions, including the following:

a) that prior to the alleged injury defendant Biondolillo never had numbness in his fingers and tingling in his arm, when in fact, five months prior to his injury the defendant had numbness in his fingers and tingling in his arm;

b) that in 1993 defendant Biondolillo had experienced shoulder and neck pain and only saw one doctor, when in fact, he failed to mention that he had gone to the Cleveland Clinic experiencing arm numbness, tingling in his fingers, and pain radiating into the neck;

c) that defendant Biondolillo claimed the neck and shoulder pain he incurred in 1993 had no specific cause, when in fact, it was caused by unusually strenuous yardwork;

d) that defendant Biondolillo had been treated by a chiropractor named Dawn Swilling only for minor lower back pain, when in fact, he had been treated for more than a year by Dawn Swilling for neck and shoulder pain;

e) that prior to the arrest of the drug trafficker defendant Biondolillo stopped to eat at the McDonalds, when in fact, he had not eaten at the McDonalds;

f) that he had never told the doctors who examined him after the alleged injury that he had tackled the subject, when in fact, he had told the doctors that he had tackled the

5

subject;

g) that his doctors told him that the injury to his neck and shoulder was caused by his stepping into the hole, when in fact, the doctors told him the injury was caused by him allegedly tackling the subject;

h) that due to his alleged injuries he could no longer play certain sports, such as basketball and softball, when in fact, he could play such sports; and

i) that his doctors might not allow him to participate in an eleven week training session at the FBI National Academy, when in fact, in or about October 1996 defendant Biondolillo had been told he was going to the FBI National Academy and in or about December 1996 a physician had certified that defendant Biondolillo could participate in strenuous physical activity and that defendant Biondolillo demonstrated equal bilateral strength in both arms and no evidence of any disabling conditions.

21.     It was further part of the scheme that on or about January 30, 1997, defendant Biondolillo, in conjunction with his enrollment at the FBI National Academy, filed a registration form wherein he stated that during the past six months he participated in jogging and basketball on a daily to weekly basis, and defendant Biondolillo failed to enter anything in the section requesting him to detail any injuries or other physical disabilities incurred that would adversely affect his performance.

22.     It was further part of the scheme that from April 1, 1997 through June 30, 1997, defendant Biondolillo attended the 189th session of the FBI National Academy, and participated in various strenuous physical activities, including defense tactics, fitness runs and other forms of athletics.

23.    It was further part of the scheme that in May 1997, the insurance company (Crum & Foster) representing Lehn issued a check for $10,000 to defendant Biondolillo in order to settle the lawsuit against Lehn.


## MAILINGS

24.    On or the dates set forth below, at Broward County, in the Southern District of Florida, and elsewhere, the defendant,

ROBERT ANTHONY BIONDOLILLO,

for the purpose of executing and attempting to execute the above described scheme and artifice to defraud and to obtain money and other property by false and fraudulent pretenses and representations, did knowingly and willfully cause to be delivered by United States mail according to the direction thereon, certain mail matter listed below, by the sender listed below:

7

| COUNT | DATE | SENDER | MAIL MATTER |
|-------|------|--------|-------------|
| 1 | 5/10/97 | Crum & Forster | Settlement check in the amount of $10,000 |
| 2 | 1/17 /01 | Johns Eastern | Check in payment of medical bill issued to Sunrise Medical Group, Inc. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

A TRUE BILL

_____
FOREPERSON

_Steven R. Petri_

GUY A. LEWIS
UNITED STATES ATTORNEY

JEFFREY N. KAPLAN
ASSISTANT U.S. ATTORNEY

8

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET 05 - 21014

CIV- JORDAN

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROBERT BIONDOLILLO

**DEFENDANTS**

PAUL MYER, Federal Bureau of Investigation Special Agent and STEFFAN NASS, FBI Special Agent

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

*Dade 05-cv-21014/Jordan/Klein*

/KLEIN]

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
FREIDIN & BROWN, P.A. 305-371-3666
2 South Biscayne Blvd., #3100
Miami, Florida 33131

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | B☐ 630 Liquor Laws | | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 640 R.R. & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | | A☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | B☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights | B☐ 550 Civil Rights | | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | B☐ 555 Prison Condition | | | A OR B |

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Malicious Prosecution and Due Process Violation

LENGTH OF TRIAL via 10 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ +75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE 4/12/05

SIGNATURE OF ATTORNEY OF RECORD   *Andy Malone*

**FOR OFFICE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE *# 250.00*   MAG. JUDGE *919047*

*04/12/05*